COFFEY, APPELLEE, *v.* SHENK ET AL., APPELLANTS.
HARDWICK, APPELLEE, *v.* SHENK ET AL., APPELLANTS.

(Nos. 72368, 72369 and 72370—Decided January 28, 1974.)

*Messrs. Waite, Schindel, Bayless & Schneider* and *Mr. Stanley M. Chesley,* for appellees.
*Mr. Robert O. Smith,* for appellants.

LYNCH, P. J. Defendant Ernest Wilson and defendant Norwood Yellow Cab Company, are appealing the verdict and judgment in which Mary Coffey was awarded $9,853.50, Mary Hardwick was awarded $2,500, and Arlene Coffey was awarded $1,000.

This case arises out of an automobile accident on October 28, 1962, at the intersection of Maple Avenue and Station Avenue, Norwood, Ohio, in which the three plaintiffs were in an automobile, going east on Maple Avenue, and was hit broadside by defendants' taxicab, which was going north on Station Avenue and did not stop for the stop sign. The taxicab was driven by defendant Ernest Wilson, who was employed by Norwood Yellow Cab Company.

It was stipulated by defense counsel that defendant Wilson was negligent so that the only questions before the jury were the nature, extent, severity and duration of the injuries suffered by the three plaintiffs as a result of this accident.

Defendants' first assignment of error concerns alleged misconduct of counsel for plaintiffs in commenting on material in defense counsel's file which resulted in prejudicial error when the trial court refused to remedy the misconduct or grant a mistrial.

Under the cross-examination of defendant Wilson, Mr. Wilson testified that he had seen pictures of the accident in Mr. Smith's office. Counsel for plaintiffs then requested Mr. Smith to produce these pictures. Mr. Smith's objection was sustained by the trial court on the basis that they were the work product of counsel, and the jury was instructed to disregard anything pertaining to these photographs. Defendant's motion for a mistrial was overruled.

Defense counsel eventually introduced photographs of each car involved in this accident.

Plaintiffs' counsel commented on these photographs in his closing argument.

We overrule defendants' first assignment of error because we hold that neither the request of plaintiffs' counsel for the photographs of defendant Wilson's taxicab which

were in the possession of counsel for defendants, nor the comment on such photographs by plaintiffs' counsel in his closing argument, under the circumstances of this case, constituted such misconduct as to be prejudicial error. *Cusumano* v. *Pepsi-Cola Bottling Co.*, 9 Ohio App. 2d 105; 53 Ohio Jurisprudence 2d 168-169, Trial, Section 258; 4 Ohio Jurisprudence 2d 204-205, Appellate Review, Section 959.

Defendants' second assignment of error has several branches, but it relates to the trial court's overruling of the motions of defendant Wilson to quash service of summons.

The address of Ernest Wilson, on the second amended petition which was filed October 20, 1964, was listed as 6313 Vine Street, Cincinnati, Ohio, but he was served through the Secretary of the State of Ohio pursuant to R. C. 2703.20.

Judge Charles E. Webber's narrative bill of exceptions contained the following:

"Plaintiffs' counsel stated by way of testimony that diligent effort was made to locate the whereabouts of the defendants, Johnny Brown and Ernest Wilson, including a conversation with Dorothy Lipp prior to her being made a defendant in the original action, and her conversation indicated that Johnny Brown and Ernest Wilson were no longer in the jurisdiction and that their whereabouts were unknown. Further counsel introduced and made a part of the record a letter sent to Ernest Wilson by regular ordinary first-class mail prior to filing a suit against him which letter was sent to his last known address on October 16th, 1964 which letter was returned marked 'Unfound, no forwarding address.' "

Defendant Wilson in his answer stated that the trial court had no jurisdiction to hear this case because he was not served with summons according to law, and that the action of plaintiffs was barred by the statute of limitations.

Defendant Wilson testified at the trial that at the time of the accident he lived with his mother at the corner of Maple and Montgomery, but that the address on his driv-

er's license from which the police took his address was 6313 Vine Street, which is where his ex-wife lived. In 1962, Mr. Wilson moved to Mineral Avenue, where he lived for two years. In 1964 he moved to 12158 Marwood Lane, Springdale, Ohio.

Defendant Wilson contends that he was an Ohio resident at the time this accident occurred and at all times thereafter; therefore, the provisions of R. C. 2703.20 were inapplicable to this case. However, the address of defendant Wilson furnished to the investigating policeman was not his correct address. We feel that plaintiffs had a right to rely on this address as being the correct address of defendant Wilson at the time of the accident. Upon a review of the entire record, we conclude that Judge Webber's decision that the plaintiffs used due diligence to locate defendant Wilson and that R. C. 2703.20 is applicable to this case is amply supported under the facts. See *Hendershot* v. *Ferkel,* 144 Ohio St. 112; *Volmer* v. *Hoel,* 87 Ohio App. 199.

We find defendants' second assignment of error to be without merit.

Defendants' third assignment of error concerns statements of counsel for plaintiffs, on final argument, concerning loss of earnings which, he claims, were misrepresented and misstated. Counsel also claims that the trial court failed to correct this error, either contemporaneously or at the conclusion of its general charge.

Defendants introduced into evidence the payroll records of plaintiff Mary Coffey, from General Electric Company, covering the period from September 21, 1964, through December 1971. They revealed that she lost considerable time from work, but did not reveal the reason for Mrs. Coffey's not working.

In his closing argument counsel for plaintiffs commented that P. X. 9 reveals that Mrs. Coffey lost 2636 hours of work between 1964 and 1971, which amounted to $7,908, at $3 per hour. He also estimated that the loss of time between the time of the accident and 1964 would amount to $2,256, plus the earnings for one month in the amount of

$380 about which there is no dispute, making a total of $10,544. Defense counsel's objection was overruled by the trial court. The trial court instructed the jury that any comments of counsel, like opening statements or closing statements, are only given to aid them in their deliberations and were not evidence. At the conclusion of the general charge, defense counsel again stated that he felt that the assumption of plaintiffs' counsel as to the loss of earnings of Mrs. Coffey between 1962 and 1964 was improper, but the trial court disagreed with him.

It is well settled law that where there is some evidence in the record, counsel may make inferences and deductions therefrom in their closing arguments. Furthermore, considerable liberality is allowed counsel in drawing such inferences. *Cusumano* v. *Pepsi-Cola Bottling Co., supra* at 122; 53 Ohio Jurisprudence 2d, *supra.*

We agree with the trial court that there was some evidence in this record upon which counsel for plaintiffs could make the inferences and deductions that defense counsel is questioning in this assignment of error. Therefore, we overrule defendants' third assignment of error.

Defendants' fourth assignment of error is that the verdict and judgment for plaintiff Mary Coffey is manifestly against the weight of the evidence in that they were, in part, based on a consideration of a medical condition known as cystocele which did not result from the accident upon which this suit is based.

Defendants' fifth assignment of error is that the verdict and judgment of $9,583.50 for plaintiff Mary Coffey is excessive. We will discuss these two assignments of error together because they are interrelated.

Mary Coffey was the driver of the automobile going east on Maple Avenue. As a result of this accident, she was thrown about in her car and finally thrown out of her car to the street and sustained injuries to her neck, her back, her left shoulder and left arm. She was taken to Good Samaritan Hospital where x-rays were taken. The next day she saw Dr. Froshauer, who testified that Mrs. Coffey had considerable pain and spasm of the neck muscles, the

thoracic spine and lumbar spine, and multiple bruises on her body. Mrs. Coffey saw Dr. Froshauer about twelve to fifteen times up to April 1964. Dr. Froshauer's bill for his services was $70.

Dr. Froshauer referred Mrs. Coffey to Dr. Paul Duffy, an orthopedic surgeon, who examined her on April 29, 1964, and found tightness and tenderness upon palpation and spasm in her cervical area, which is from the base of the skull to the shoulders, that there was more spasm and tenderness on the left side than on the right side; that she had, approximately, a thirty percent limitation of motion of her cervical spine in all ranges. She had a 20 degree limitation of abduction of her right shoulder, which is moving the shoulders away from the body; a 20 degree limitation of forward flexion; and a 30 degree limitation of abduction and forward flexion of her left shoulder. She also had tenderness and spasm in the lumbar spine, with, approximately, a 25 percent limitation of movement of flexion and extension of bending.

Dr. Duffy diagnozed Mrs. Coffey's condition as a sprain or strain or tears of the muscle in her cervical area and her dorsal and lumbar area and injury to the cuff of the shoulder. He felt that Mrs. Coffey had some tears of the muscles and the attachments in the inner cuff of the shoulder with secondary bursitis. This was more severe on the left than on the right. He prescribed a corset for her low back and head halter traction for her neck. His bill was $75.

Dr. Florez's bill for the treatment of the broken right clavicle or collarbone of plaintiff Arlene Coffey was $150. At the time of this accident, Mrs. Coffey was employed by General Electric and was making $2.42 an hour. As a result of this accident, she was off work for a month and then lost about 45 days of work afterwards because of the injuries to her back.

Defendants contend that Mrs. Coffey's cystocele condition did not result from this accident. On September 7, 1965, Mrs. Coffey had an operation at Epp Memorial Hospital for a medical condition known as cystocele, in which

Mrs. Coffey's bladder had fallen into the vaginal wall. She first consulted Dr. Heigerick, an osteopathic physician and surgeon, concerning this condition on December 3, 1964, with a complaint that she had pain in her back with frequency of urination since her automobile accident two years previously. She was in the hospital thirteen days. Dr. Heigerick testified that there was a direct causal connection between Mrs. Coffey's autmobile accident in October, 1962, and this operation.

Defendants' expert witness, Dr. Clarence McLain, associate professor of gynecology and obstetrics at the University of Cincinnati College of Medicine, testified that he did not think Mrs. Coffey's cystocele condition had anything to do with the accident in question. We conclude that the evidence as to whether Mrs. Coffey's cystocele condition had any direct causal connection with the automobile accident at issue is in conflict and was a jury question.

On November 22, 1965, Mrs. Coffey returned to Dr. Heigerick with a complaint of pain in her back. X-rays were taken, and a lift was put in her right heel and a brace was recommended to be applied. Dr. Heigerick diagnosed her condition as pain in both sacroiliac joints. Mrs. Coffey was given manipulative therapy and medicinal therapy. Dr. Heigerick testified that there is a direct relationship between the automobile accident of October, 1962, and her back condition. The last time that Dr. Heigerick saw Mrs. Coffey concerning her back condition was May 26, 1972. In Dr. Heigerick's opinion, Mrs. Coffey has a permanent disability to her back as a result of her automobile accident. His services for treating the back of Mrs. Coffey was $175 and his charge for the operation was a little over $200. The bill of the Epp Memorial Hospital was $444.-70.

Upon a review of the entire record, we conclude that the verdict and judgment of $9,583.50 for plaintiff Mary Coffey is not manifestly opposed to the clear weight of the evidence, and is not so large and out of proportion to the injuries inflicted as to shock all sense of proportion. 3 Ohio Jurisprudence 2d 812-817, Appellate Review, Section

819; 4 Ohio Jurisprudence 2d 506-507, Appellate Review, Section 1156.

Therefore, we overrule defendants' fourth and fifth assignments of error. Defendants' sixth assignment of error is that the verdict awarded to plaintiff Mary Hardwick was speculative and excessive.

Mary Hardwick was a passenger in the automobile driven by plaintiff Mary Coffey, who is her mother. At the time of the trial, she was hospitalized for asthma, which was unrelated to the instant case, and her recovery was not adequate to allow her to testify at the trial. By agreement of counsel for both sides, her deposition, taken by counsel for defendants on cross-examination, was read into the record by the counsel for defendants.

At the time of the accident, plaintiff Mary Hardwick was seven months pregnant. She received a blow on her head which knocked her temporarily unconscious and she had pain on the right side of her face and head and in her right shoulder and left side. She was taken by ambulance to the hospital where x-rays of her head and shoulder were taken. She saw Dr. Froshauer, who advised her to rest before she returned to her home in Somerset, Kentucky. She was concerned about the baby she was carrying and she spent the next two weeks in bed at her mother's house before returning to her home in Somerset, Kentucky. The baby was born without any problems. She had pretty strong headaches due to this accident. After her baby was born, she had pains on her left side in the pelvic area which, eventually, gradually decreased.

Upon a review of the entire record, we conclude that the verdict and judgment of $2,500 for plaintiff Mary Hardwick is not manifestly opposed to the clear weight of the evidence and is not so large and out of proportion to the injuries afflicted as to shock all sense of proportion. 3 Ohio Jurisprudence 2d 812-817, Appellate Review, Section 819; 4 Ohio Jurisprudence 2d 506-507, Appellate Review, Section 1156. Therefore, we overrule defendant's sixth assignment of error.

Defendants' seventh assignment of error is that the

trial court erred in permitting testimony and argument in the cases of plaintiffs Mary Hardwick and Arlene Coffey, which, while not in the name of permanency of injuries, actually constituted such.

. Defendants' only reference to the record to support this assignment of error concerned Dr. Florez's testimony on the fractured collar bone of Arlene Coffey, in which he testified that the bony condition that developed over the healed fracture is a permanent condition. Defendants made no objection to this testimony. Defense counsel read the deposition of plaintiff Mary Hardwick without objection.

It is too late after trial and judgment to complain for the first time that the petition does not contain averments necessary to warrant the consideration of evidence pro and con without objection. *Younger & Farmer Co.* v. *Halliday,* 107 Ohio St. 431 at page 441; 3 Ohio Jurisprudence 2d 66-67, Appellate Review, Section 203.

To take advantage of the admission of improper testimony into evidence, one must object to the admission in the lower court. An objection that might have been taken to evidence produced at trial in the court below, but which was not taken, will be considered as waived, and will not be noticed on review. 3 Ohio Jurisprudence 2d 63-65, Appellate Review, Section 203.

· · In his charge to the jury, the trial court stated that there was some testimony as to permanent injuries to plaintiff Mary Coffey, but as to the other plaintiffs—namely, Mary Hardwick and Arlene Coffey—the jury was not to consider damages for permanent injury. Upon a review of the entire record, we find that defendant's seventh assignment of error is without merit.

In a letter to this court, subsequent to the hearing on this case, defense counsel raised the question as to the judgment against Norwood Cab Company. This question was neither specifically made an assignment of error, nor briefed by defense counsel, prior to the hearing on this case. As a matter of policy, this court does not consider assignments of error which opposing counsel did not have the opportunity to answer at the time of the hearing of the

case. However, we will make some comments on this question.

Defense counsel states that he raised this question in his motion to vacate and/or amend the judgment entry. However, we were unable to find such motion in the files of these cases; therefore, the record does not support these statements.

The record does reveal a discussion as to the remaining defendants to this lawsuit after the trial court sustained motions of defense counsel to dismiss various defendants. The trial court stated that Ernest Wilson and Norwood Yellow Cab would be listed in the verdict forms, which they were. Defense counsel questioned this but made no specific objection.

The first paragraph of the syllabus of *Limbaugh* v. *The Western Ohio Railroad Co.*, 94 Ohio St. 12, is as follows:

"1. When the actual wrongdoer, who is not served or made a party defendant in an action, has been substituted for another mistakenly sued, and, after such substitution, appears by counsel and contests the merits, it cannot afterwards question the jurisdiction of the court over it."

See 3 Ohio Jurisprudence 2d 52, 53, Appellate Review, Section 191.

*Judgment affirmed.*

DONOFRIO and O'NEILL, JJ., concur.

LYNCH, P. J., and O'NEILL and DONOFRIO, JJ., of the Seventh Appellate District, sitting by designation in the First Appellate District.